IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                              PLAINTIFF

        v.           Criminal No. 06-20005

THOMAS M. COUGHLIN                                    DEFENDANT


### SENTENCING MEMORANDUM

The Defendant, Thomas M. Coughlin, former Chief Operating Officer, Executive Vice President and Vice Chairmen of the Board of Directors of Wal-Mart Stores, Inc., the world's largest retailer, fraudulently misappropriated funds from that company. He was charged in this Court and pleaded guilty to five felony counts of aiding and abetting wire fraud and one felony count of filing false tax returns. The United States Sentencing Guidelines advised a sentence for Coughlin within the range of 27 to 33 months imprisonment. The Court departed and varied from that range to sentence Coughlin to five years of probation, including 27 months of home detention with electronic monitoring.[1] The United States Court of Appeals for the Eighth Circuit reversed that sentence in a 2-1 decision, finding it did not "fall within the range of reasonableness," and remanded the case for resentencing. *U.S. v. Coughlin*, 500 F.3d 813, 814 (8th Cir. 2007).

_____

[1]

The Court also ordered Coughlin to pay a $50,000 fine and $411,218 in restitution, which were both paid within days of the sentence.

Subsequent to the reversal, the United States Supreme Court issued its decision in *Gall v. U.S.*, 128 S.Ct. 586 (December 10, 2007). The Supreme Court in *Gall* determined that certain methods used by appellate courts in reviewing sentencing decisions failed to give sufficient deference to the determinations of sentencing judges, 128 S.Ct. at 602, and were, in certain respects, inconsistent with the Supreme Court's decision in *U.S. v. Booker*, 543 U.S. 220 (2005). *Id.* at 594. As to district courts, the *Gall* Court restated and expounded upon the process articulated in *Rita v. U.S.*, 127 S.Ct. 2456 (2007) for sentencing of criminal defendants. *Id.* at 596-97.

There has been considerable discussion of late concerning the impact of *Gall*,[2] and it is not readily apparent how the Court can reconcile the mandate from the Eighth Circuit in

---

[2]

*See e.g.* Linda Greenhouse, *Justices Restore Judges' Control Over Sentencing*, N.Y. TIMES, December 11, 2007, at A1 (stating "the court said federal district judges had broad discretion to impose what they think are reasonable sentences, even if federal guidelines call for different sentences."); David G. Savage, *Justices OK latitude on sentencing*, L.A. TIMES, December, 11, 2007, at 1 (referring to *Gall* as a "call for a return to more individualized sentences"); James Oliphant, *Mandatory prison terms loosened*, CHI. TRIB., December 11, 2007, at 16 (quoting Professor Douglas Burman, Moritz College of Law, Ohio State University, stating "[t]he Supreme Court is right now perhaps the most liberal appellate court on criminal sentencing issues in the nation.").

AO72A
(Rev. 8/82)

this case with *Gall*.[3]   The Court believes it necessary to provide the following memorandum, containing the Court's reasoning in resentencing Coughlin to five years of probation, including 27 months of home detention with electronic monitoring, giving credit to Coughlin towards that sentence for time already served,[4] and 1500 hours of community service.

### I.   The Eighth Circuit mandate and *Gall*

In *Gall*, the Supreme Court found that appellate courts err by requiring extraordinary circumstances to support substantial variances from the Guidelines, assigning numerical quantities to variances in order to calculate their proportionality to their justifications[5] and failing to give weight to the substantially punitive nature of probation by considering sentences of probation to constitute 100% variances from Guidelines ranges of imprisonment. 128 S.Ct. at 594-96.   The Supreme Court also found that the errors of

---

[3]

*Gall* came to the Supreme Court on appeal from the Eighth Circuit, addressing that court's appellate standards particularly.

[4]

The Sentence of probation runs from August 11, 2006, when Coughlin's initial sentence was imposed, to August 10, 2011.   Coughlin began serving his sentence of home detention on October 10, 2006.   The period of home detention runs from October 10, 2006 to January 10, 2009.

[5]

The Eighth Circuit required variances to be supported by justification that was "proportional to the extent of the difference between the advisory range and the sentence imposed."   128 S.Ct. at 594 (quotations omitted).

AO72A
(Rev. 8/82)

the sentencing judge identified by the appellate court were not, "whether viewed separately or in the aggregate, [] sufficient to support the conclusion that the District Judge abused his discretion."[6] *Id.* at 594. The Supreme Court reversed the appellate court's decision because, "[a]lthough the Court of Appeals correctly stated that the appropriate standard of review was abuse of discretion, it engaged in an analysis that more closely resembled *de novo* review of the facts presented . . . ." *Id.* at 600. The Supreme Court explained that "[t]he Court of Appeals clearly disagreed with the District Judge's conclusion that consideration of the § 3553(a) factors justified a sentence of probation . . . . But it is not for the Court of Appeals to decide *de novo* whether the justification for a variance is sufficient or the sentence reasonable."[7] *Id.* at 602.

---

[6]

The appellate court in *Gall* found the following errors: "[f]irst, the district court gave too much weight to Gall's withdrawal from the conspiracy," 446 F.3d at 889, "[s]econd, the district court gave significant weight to an improper factor when it relied on general studies showing persons under the age of 18 display a lack of maturity . . . [because] Gall sold ecstacy as a 21-year-old," "[t]hird, the district court did not properly weigh the seriousness of Gall's offense," "[f]ourth, the record does not show that the district court considered whether a sentence of probation would result in unwarranted sentencing disparities," and fifth, "the district court placed too much emphasis on Gall's post-offense rehabilitation." *Id.* at 890.

[7]

Instead, *Gall* instructs appellate courts to apply a deferential abuse of discretion standard to sentencing decisions whether the sentence given is "inside, just outside, or significantly outside the Guidelines range". 128 S.Ct. at 591. Subsequent to *Gall*, the

Coughlin urges this Court to read *Gall* to overrule the Eighth Circuit's opinion in this case. However, that opinion does not expressly require extraordinary circumstances, apply a proportionality test or engage in mathematical calculation. While the Eighth Circuit compiled a list of errors similar to the list it found in *Gall*, it is not for this Court to determine whether that list is, as in *Gall*, insufficient to support a finding of abuse of discretion. *Gall* cannot be read to overrule the Eighth Circuit's opinion above because *Gall* errors are not reflected in the opinion.[8]   As abuse of

Eighth Circuit "view[s] the district court's decision through a 'deferential abuse-of-discretion' lens." *U.S. v. Lehmann*, slip op. at 5 (8th Cir. January 17, 2008) (affirming a variance from 37 to 46 months imprisonment to five years probation).

[8]

This is the case although the Eighth Circuit since *Gall* has seemed to acknowledge global error in its review of sentencing decisions, stating "[n]ow bound by *Gall*, our standard of review is more deferential than when we employed the 'extraordinary circumstances' method." *U.S. v. Braggs*, 2008 WL 60180, *4 (8th Cir. January 7, 2008). The Eighth Circuit has cited *Gall* in affirming downward variances based on proper consideration of the factors found in 18 U.S.C. § 3553(a). *See, e.g.*, *U.S. v. Lehmann*, slip op. at 4-7 (8th Cir. January 17, 2008) (affirming a variance from a Guidelines range of 37 to 46 months to a sentence of 5 years probation with six months of community confinement); *U.S. v. McGhee*, slip op. at 1-2 (8th Cir. January 16, 2008) (affirming deviation from a range of 235 to 293 months to a sentence of 192 months imprisonment); *U.S. v. Lucas*, slip op. at 1-2 (8th Cir. December 28, 2007).

Further, the Eighth Circuit has expressed concern post-*Gall* that district courts might feel unduly constrained by pre-*Gall* reversals of sentencing decisions. In *U.S. v. Pool*, the sentencing judge varied from a Guidelines range of 33 to 41 months to a sentence of 5 years of probation after careful consideration of the § 3553(a) factors. Slip op. at 1 (8th Cir. January 24, 2008). Prior to *Gall*, the Eighth Circuit reversed that sentence, finding the sentencing judge gave insufficient weight to some factors and too much weight

discretion was found on the unique facts at hand, differing from those of *Gall*, the Court cannot presume insufficient deference was given to its sentencing decision. Accordingly, the Court will follow the resentencing mandate from the Eighth Circuit, while relying on *Gall* to guide the analysis.

## II.   Resentencing

The Court draws an analytical framework from *Gall*[9] in

---

to other factors. *Id.* at 2.   On remand, the sentencing judge imposed a sentence of 33 months imprisonment without considering the § 3553(a) factors. *Id.*   Subsequent to *Gall*, the Eighth Circuit reversed that sentence, explaining, "we are concerned the district court's decision to resentence Pool within the Guidelines range-- without even mentioning the factors it had previously cited as grounds for a variance--may indicate that the court felt constrained to do so by the remanding opinion.  The district court's discretion was not so limited, however, as the Supreme Court subsequently made clear in *Gall*." *Id.* (citation and formatting omitted).

The Defendant urges in its sentencing memorandum that "[h]ad *Gall* been decided prior to Tom Coughlin's sentencing, the Court of Appeals could not have reversed this Court's sentence." (Doc. 30 p. 4.)

However, the Court will not find *Gall* error by speculating as to unexpressed reasoning in the opinion above.  The Court is not, as in *Pool*, unduly constrained by the remanding opinion in imposing sentence.  The Court considers § 3553(a) extensively and finds no conflict between the sentence it deems appropriate today and the resentencing mandate of the Eighth Circuit.  The Court also notes that the law-of-the-case doctrine requires it to follow the appellate decision above with respect to all issues that opinion addresses. *U.S. v. Bartsh*, 69 F.3d 864, 866 (8th Cir. 1995).

9

While *Gall* focuses primarily on standards for appellate review of sentencing decisions, it clearly states the process for district court sentencing of criminal defendants as follows:  (1) begin by "correctly calculating the applicable Guidelines range" to be used as a "starting point and the initial benchmark," (2) give "both parties an opportunity to argue for whatever sentence they deem appropriate," (3) "consider all of the §3553(a) factors to determine whether they support the sentence requested by a party" without presuming that the Guidelines range is reasonable, (4) if a sentence

AO72A
(Rev. 8/82)

order to address and correct each error, identified by the Eighth Circuit above, in the Court's initial sentencing decision.  In that decision, the Court departed downward pursuant to Guideline § 5H1.4, which allows departure when a defendant suffers from an "extraordinary physical impairment." The Court also determined that, in the event departure was not appropriate, a variance from the Guidelines range was called for under 18 U.S.C. § 3553(a).  The Court now readdresses that sentence in view of the errors identified by the Eighth Circuit's opinion.

### A.   Guidelines calculation and § 5H1.4 departure

Pursuant to the Guidelines, Coughlin's presentence investigation report sets his base offense level at 6.  The amount of loss raises the offense level to 15.  *See* U.S.S.G. § 2F1.1(b)(1)(J).  A further 2 level increase for planning, *see* U.S.S.G. § 2F1.1(b)(2)(A), a 2 level increase for organizing, *see* U.S.S.G. § 3B1.1(c), and a 2 level increase for abuse of a position of trust, *see* U.S.S.G. § 3B1.3, raises the offense level to 21.  A reduction of 3 points for acceptance of responsibility under U.S.S.G. § 3E1.1 results in

---

outside the Guidelines range is warranted, "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance," and (5) "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." 128 S.Ct. at 596-97; *see also Braggs*, 2008 WL 60180 at *3.

a total offense level of 18.   Coughlin's criminal history
category is I because there are no criminal convictions or
arrests in Coughlin's past.   Those figures result in a
recommended sentence of 27 to 33 months imprisonment.   This
Guidelines computation is undisputed by the parties.

In its initial sentencing decision, the Court departed
downward from that range pursuant to U.S.S.G. § 5H1.4 based on
a finding that Coughlin suffered from extraordinary physical
impairment.   In reviewing that departure, the Eighth Circuit
found that this Court committed clear error and abused its
discretion because "[t]he record, omitting conjecture, does
not show Coughlin's condition will worsen in a BOP [Bureau of
Prisons] facility" or that prison would subject Coughlin to
"more than the normal inconvenience or danger."[10]  500 F.3d at
818.   The Eighth Circuit made the following findings as to
Coughlin's physical condition:

---

[10]

The Eighth Circuit explained that three questions are asked to
determine if an extraordinary physical impairment exists:  (1) is
the particular defendant's physical condition such that he or she
would find imprisonment more than the normal hardship, (2) would
imprisonment subject him or her to more than the normal
inconvenience or danger, meaning would imprisonment worsen his or
her condition or does he or she require special care not provided
by the BOP, and (3) does the physical condition have any substantial
present effect on the defendant's ability to function?  500 F.3d at
818.

The Eighth Circuit did not address the first or third questions
because they were not in dispute.  *Id.*

Page 8 of  30

> Coughlin is in poor health. The record reflects Coughlin is six feet four inches tall and weighs about 330 pounds. Coughlin survived sudden cardiac death and has had an implantable cardioverter defibrillator since 2003. Coughlin presently suffers from cardiac arrhythmia, severe pulmonary hypertension, double vessel coronary atherosclerosis, type II diabetes, gout, ethmoid sinusitis, obesity, high blood pressure, severe allergies, and back and knee pain. Coughlin also suffers from severe obstructive sleep apnea, which necessitates the use of a continuous positive airway pressure machine at night to prevent a dangerous drop in Coughlin's oxygen levels.

500 F.3d at 816. On appeal, Coughlin relied on *U.S. v. Wadena* to support the argument that his medical condition justified departure. *Id*. at 818. In *Wadena*, the Eighth Circuit found the Defendant's severe kidney disease, requiring dialysis treatments three times per week, and other serious medical problems constituted a physical impairment sufficient to support a deviation from 18 to 24 months imprisonment to five years of probation.[11] 470 F.3d 735, 740 (8th Cir. 2006). In the case at bar, the Eighth Circuit found that "[h]ere, Coughlin's health ailments were not as severe as Wadena's ailments." 500 F.3d at 818. While Coughlin argues that *Gall* calls that finding into question,[12] the Court may not presume

---

[11]

Wadena's physical condition was analyzed under § 3553(a)(1) to support a variance, 470 F.3d at 739, while the Court analyzed Coughlin's physical condition under § 5H1.4 to support a departure.

[12]

In addition to finding that the Eighth Circuit "correctly stated that the appropriate standard of review was abuse of discretion . . . [but] engaged in an analysis that more closely resembled *de novo*

AO72A
(Rev. 8/82)

that the Eighth Circuit committed *Gall* error by failing to give deference to this Court's finding of extreme physical impairment.  With the complete record before it, the Eighth Circuit held this Court's finding was unreasonable and an abuse of discretion.  Thus, the Court does not depart based on extreme physical impairment under § 5H1.4.  Coughlin's advisory Guidelines sentencing range remains 27 to 33 months of imprisonment.[13]

### 2.   Arguments by the parties

At Coughlin's initial sentencing, the Government recommended a sentence at the low end of the Guidelines range.

---

review," 128 S.Ct. at 600, the *Gall* Court articulated "practical considerations" that require deference to sentencing decisions of district judges:

> The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case.  The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record.  The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court.  Moreover, district courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines sentences than appellate courts do.

*Id*. at 597-98 (citations and quotations omitted).  Subsequent to the *Gall* decision, the Eighth Circuit acknowledged that the deferential standard of abuse of discretion "recognized the institutional advantage of district courts in making sentencing determinations."  *Braggs*, 2008 WL 60180 at *3.

[13]

While, in our initial sentencing, we found considerations other than Coughlin's physical condition to support departure, those considerations standing alone are insufficient.

Coughlin sought departure and variance based primarily on his medical condition. In preparation for resentencing, the Government and Coughlin submitted sentencing memoranda addressing certain considerations, including the impact of *Gall*. The Government's memorandum urges that a sentence within the Guidelines range is appropriate and that the Bureau of Prisons can provide Coughlin with sufficient treatment for his ailments while incarcerated. The Defendant requests that, in light of *Gall*, a sentence be imposed identical to the Court's initial sentence.

### 3. Section 3553(a) factors and justification for degree of variance

In its initial sentencing decision, this Court varied from the Guidelines range pursuant to § 3553(a). In reviewing that variance, the Eighth Circuit found that this Court committed clear error and abused its discretion by failing to link mitigating considerations to 3553(a) factors, by failing to consider certain 3553(a) factors,[14] by failing to "weigh[] both the aggravating and the mitigating nature of Coughlin's

---

[14] Subsequent to *Gall*, the Eighth Circuit has reaffirmed that "[n]othing in § 3553(a) or in the *Booker* remedy opinion requires robotic incantations that each statutory factor has been considered." *Lehmann*, slip op. at 5 (citing *U.S. v. Lamoreaux*, 422 F.3d 750, 756 (8th Cir. 2005)). However, in light of the Eighth Circuit opinion above, the Court finds it necessary to address each of the § 3553(a) factors.

AO72A
(Rev. 8/82)

conduct upon his family and community"[15] and failing to "state the reasons with sufficient specificity for the non-Guidelines sentence." 500 F.3d at 819. Consistent with that admonishment, *Gall* requires sentencing courts to "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing," 128 S.Ct. at 597, and notes favorably that "[i]n addition to making a lengthy statement on the record, the [district] judge filed a detailed sentencing memorandum explaining his decision" and "the District Judge explained why he had concluded that the sentence of probation reflected the seriousness of the offense and that no term of imprisonment was necessary." *Id*. at 593.

The Court determines that a § 3553(a) variance is warranted, and, in accordance with the foregoing, attempts to satisfy the requirement of adequate explanation and sufficient specificity by providing the following discussion of its decision to vary. Section 3553(a) instructs the Court to impose a sentence "sufficient, but not greater than necessary" in consideration of certain factors. In resentencing Coughlin, the Court attempts to correct each of the errors

---

15

*Gall* might be read to call this finding of error into question. The Supreme Court stated in *Gall* that "it [is] not incumbent on the District Judge to raise every conceivably relevant issue on his own initiative." 128 S.Ct. at 599.

AO72A
(Rev. 8/82)

identified by the Eighth Circuit above while imposing such a sentence.

>    **(a)(1)     Nature and circumstances of the offense and history and characteristics of the defendant**

Coughlin's offense reflects a disturbing presence of deceit and self-dealing in the most accomplished of corporate executives.   Coughlin demonstrated that the procedural bureaucracies of companies like Wal-Mart can be exploited to the personal gain of their most trusted executives.   The revelation of his crimes was surely devastating to his family, caused the Wal-Mart community embarrassment and filled the greater community with concern as to the integrity of corporate America and resentment for Coughlin.   That resentment became more apparent when the Bentonville, Arkansas Public Library Foundation, which prior to these proceedings voted to name a $9,000,000 library development in honor of Coughlin and his wife, determined subsequent to Coughlin's guilty plea that the facility would not bear Coughlin's name. It is undeniable that Coughlin has caused his family and the community a great amount of grief.   However, mitigating considerations predominate.

The offense was non-violent and the first of Coughlin's career.   Coughlin has no criminal history.   There is a voluminous record of letters supporting Coughlin sent to the

Page 13 of  30

AO72A
(Rev. 8/82)

Court from Coughlin's colleagues, friends and family.  There is a record of extensive charitable giving by Mr. Coughlin from 2000 to 2005, totaling over $1,000,000, and considerable participation by Mr. Coughlin on boards of charitable and nonprofit organizations.  Most compelling is the mountain of medical history that makes clear the unlikelihood of Coughlin surviving incarceration.

The Eighth Circuit found in *Wadena* that a defendant's physical condition is relevant to factor (a)(1) analysis and properly considered there.  470 F.3d at 739.  Coughlin's physical condition weighs heavily in favor of variance.  As detailed above, Coughlin suffers from a wide range of dire medical problems.  Indeed, Judge Bye stated in his dissent to the opinion above, "who will be granted a departure for an extraordinary physical impairment if not Coughlin"?  500 F.3d at 821.  The medical experts at Coughlin's initial sentencing agreed that Coughlin's cardiac condition placed him at very high risk.  Coughlin's expert testified that imprisonment might well cause Coughlin's death.  During the resentencing hearing, Coughlin's expert testified that imprisonment would put Coughlin at "grave" risk of a cardiac event and that Coughlin's condition is progressive and likely to deteriorate.  The Court finds that testimony compelling such that if the record does not support departure, it weighs heavily in favor

AO72A
(Rev. 8/82)

of variance under factor (a)(1).

**(a)(2)      Need for the sentence imposed**

Factor (a)(2) instructs the Court to consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to deter crime, to protect the public from the defendant and to provide the defendant with needed medical care in the most effective manner.

The Court finds Coughlin's offense to be gravely serious and demanding of considerable punishment. So-called "white collar crime" is at the forefront of the nation's criminal agenda, and serious punishment is called for to accomplish the goals of punishment embodied in factor (a)(2). However, the Court finds probation and home detention to accomplish those goals more effectively than imprisonment. Not all defendants must be sentenced to imprisonment to be duly punished.

In *Gall*, the Supreme Court found "the unique facts of Gall's situation provide ample support for the District Judge's conclusion that, in Gall's case, 'a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing.'" 128 S.Ct. at 599. Gall, unlike Coughlin, was prosecuted, for crimes that

AO72A
(Rev. 8/82)

occurred in the past, after Gall reformed his conduct and became a productive member of society. However, the Court finds the injustice that would result from imposition of an advisory Guidelines sentence of imprisonment under those circumstances less abhorrent than that which would result from imposition of a sentence that might very well cause the death of the defendant. Even a society resolutely opposed to Coughlin's crimes, if aware of the fragility of Coughlin's condition, the severity of home detention and the potential, tragic result of imprisonment, would deride a legal system that imposed a sentence that threatened the life of the defendant unnecessarily. The Court is not unaware that the sentence imposed on Coughlin today will dismay those who feel no punishment other than imprisonment can adequately punish Coughlin or any defendant convicted of any crime. But the Court is more concerned with engendering derision for the law in those aware of Coughlin's medical condition that might well be outraged by a criminal justice system that, despite the great investments of intelligence and moral judgment that contribute to that system, produces a sentence plainly inhumane. Imprisonment is unnecessary because probation can accomplish the goals of punishment, while avoiding a serious threat to Coughlin's life.

Home detention and probation can be severe punishments,

AO72A
(Rev. 8/82)

hugely restrictive of liberty, highly effective in the
determent of crime and amply retributive.  The Supreme Court
in *Gall* agreed with United States District Judge Pratt that
probation is a "'substantial restriction of freedom,'" 128
S.Ct. at 595, stating:

> We recognize that custodial sentences are
> qualitatively more severe than probationary
> sentences of equivalent terms. Offenders on
> probation are nonetheless subject to several
> standard conditions that substantially restrict
> their liberty.  See *United States v. Knights,* 534
> U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed. 2d 497
> (2001) ("Inherent in the very nature of probation
> is that probationers 'do not enjoy the absolute
> liberty to which every citizen is entitled'"
> (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874,
> 107 S.Ct. 3164, 97 L.Ed. 2d 709 (1987)).
> Probationers may not leave the judicial district,
> move, or change jobs without notifying, and in some
> cases receiving permission from, their probation
> officer or the court.  They must report regularly
> to their probation officer, permit unannounced
> visits to their homes, refrain from associating
> with any person convicted of a felony, and refrain
> from excessive drinking.  USSG § 5B1.3.  Most
> probationers are also subject to individual
> "special conditions" imposed by the court.  Gall,
> for instance, may not patronize any establishment
> that derives more than 50% of its revenue from the
> sale of alcohol, and must submit to random drug
> tests as directed by his probation officer. App.
> 109.

*Id.* at 595-96 (footnote omitted).[16]  Judge Pratt explained that

---

[16]

The *Gall* Court noted that "'[p]robation is not granted out of a
spirit of leniency . . . .  As the Wickersham Commission said,
probation is not merely 'letting an offender off easily,'" 128
S.Ct. at 596 n.4 (citing Advisory Council of Judges of National
Council on Crime and Delinquency, Guides for Sentencing 13-14
(1957)), and "'the probation or parole conditions imposed on an
individual can have a significant impact on both that person and

the defendant "will not be able to change or make decisions about significant circumstances in his life, such as where to live or work, which are prized liberty interests, without first seeking authorization from his Probation Officer or, perhaps, even the Court.  Of course, the Defendant always faces the harsh consequences that await if he violates the conditions of his probationary term."[17]   374 F. Supp. 2d at 763.   Here, Coughlin's sentence of home detention, more so than Gall's sentence of probation, subjects Coughlin to a hugely restrictive regime of confinement, compliance, intrusion and dependency.

Coughlin's sentence has subjected him to DNA collection, home intrusion and an utter lack of autonomy.  Coughlin's home confinement began on October 10, 2006.[18]  Since that time, he

---

society . . . .  Often these conditions comprehensively regulate significant facets of their day-to-day lives . . . .  They may become subject to frequent searches by government officials, as well as to mandatory counseling sessions with a caseworker or psychotherapist.'"  128 *Id.* (citing 1 N. Cohen, The Law of Probation and Parole § 7:9 (2d ed. 1999) (brackets omitted)).

[17]

In *Wadena*, the Eighth Circuit acknowledged that probation is not necessarily a sentence of non-imprisonment because while "it could ultimately result in no incarceration (presuming Wadena does not violate the terms of his probation)," violation would result in imprisonment.  *See* 470 F.3d at 739.

[18]

According to the Probation Office, Coughlin has committed no violations of his probation and has cooperated with respect, compliance and courtesy, with every directive of the probation office.

AO72A
(Rev. 8/82)

has been restricted to within 10 feet of his residence. Probation officers enter his home to check the electronic monitoring system installed there. The electronic monitoring prevents Coughlin from reaching and roaming his property. He has been permitted to leave his property only on a handful of occasions for church, medical appointments, legal consultations and his sister's funeral. On all those occasions, Coughlin was subject to reporting requirements, and his movement was closely monitored and recorded with GPS equipment. Coughlin pays some $165 per month to cover the costs of his home confinement. His punishment is far from an act of leniency, and its characterization as such deprives sentencing courts of a valuable and effective form of punishment.

That form of punishment is especially appropriate in cases such as Coughlin's, where there is little concern for future criminal activity on the part of the defendant and the defendant is in need of medical attention. Factor (a)(2) instructs the Court to consider the need to protect the public against future criminal acts of the defendant. The Court finds little risk of danger to the public will result from declining to imprison Coughlin because it is extremely unlikely that Coughlin will ever again hold a high position of trust with a company such as Wal-Mart, Coughlin has no

AO72A
(Rev. 8/82)

criminal history, Coughlin's crimes were non-violent in nature and probation will closely monitor Coughlin's activities. Factor (a)(2) also instructs the Court to consider provision of medical care in "the most effective manner" and not only the availability of medical treatment. Probation will facilitate the most effective manner of medical treatment Coughlin can receive while adequately punishing Coughlin for his crimes. Coughlin will be able to receive any medical treatment available without the parameter of the Bureau of Prisons' limited resources.

Thus, the Court finds the substantial and just punishment of probation and home detention tantamount to the seriousness of Coughlin's offense, capable of promoting respect for the law in those that appreciate the circumstances of Coughlin's physical condition and the severely punitive quality of probation, capable of deterring corporate executives like Coughlin, who cherish their freedom of movement and right of privacy, from engaging in conduct similar to Coughlin's, capable of providing Coughlin with the most effective medical treatment and sufficient to protect the public against the Defendant.

Additionally, the Court finds a community service requirement appropriate in consideration of factor (a)(2). Coughlin was perhaps the most gifted businessperson within the

AO72A
(Rev. 8/82)

world's largest retail corporation.  To the end of promoting respect for the law, the community will surely appreciate the talents of one of the nation's foremost businesspeople flowing to the benefit of nonprofit organizations.  As explained above, Coughlin has been extremely valuable to such organizations in the past.  Coughlin's expertise is better put to use than wasted in the physical deterioration of unnecessary imprisonment.  In the Court's estimation, the substantial requirement of community service adds greatly to the severity of Coughlin's punishment.[19]

### (a)(3)    Kinds of sentences available

Factor (a)(4) is intended to accord "flexibility" to sentencing judges by "provid[ing] alternatives to incarceration where necessary . . . ."  *U.S. v. K*, 160 F. Supp. 2d 421, 431 (E.D.N.Y. 2001).  Probation, home detention and community service are available alternatives to imprisonment because they are permitted through variance.  As

---

[19]

The Court notes that there are numerous factors that add to the severity of punishment that are not often apparent or considered. For instance, while it might mean little to most, hunting was apparently Mr. Coughlin's passion when his health permitted.  But his felony conviction forever prohibits him from getting within hearing distance of a firearm, and his home confinement puts an end to his hunting endeavors, regardless of his failing medical condition.   His felony conviction will have many other repercussions.  State proceedings are now pending on the issue of whether Coughlin's retirement agreement with Wal-Mart may be rescinded due to his failure to disclose his criminal conduct.  *See Wal-Mart Stores, Inc. v. Coughlin*, No. 06-315 (Ark. April 12, 2007).

AO72A
(Rev. 8/82)

considered more fully under factor (a)(5) below, "utilization
of alternatives to incarceration in appropriate cases"
motivated the institution of the Guidelines and is intended to
be undertaken in a manner complimentary to their policies. *K*,
160 F. Supp. 2d at 432. The Eighth Circuit has found that a
variance to probation is not prohibited when the Guidelines
call for imprisonment, *Wadena*, 470 F.3d at 739, explaining:

> Such a rule would amount to the judicial
> elimination of a sentencing option that would
> otherwise be available under federal criminal
> statutes that do not impose mandatory imprisonment,
> including the statute at issue in this case. This
> judicial rule would effectively require
> imprisonment for defendants whose offense level
> falls within Zone B or above within the sentencing
> table of the Guidelines. That kind of categorical,
> mandatory approach to sentencing on the basis of
> judicially-found facts is precisely the type of
> sentencing regime the Supreme Court rejected in
> *Booker.*

*Id.* at 738. Because probation, home detention and community
service are not eliminated from the Court's sentencing
options, the Court finds imposition of such appropriate when
called for by the unique facts of a particular case.

> **(a)(4)    Kinds of sentence and the sentencing
> range established by the Guidelines**

In *Gall* the Supreme Court reaffirmed that "the Guidelines
are only one of the factors to consider when imposing
sentence, and § 3553(a)(3) directs the judge to consider
sentences other than imprisonment." 128 S.Ct. at 602. The
Eighth Circuit, citing *Gall*, reminds sentencing judges that

AO72A
(Rev. 8/82)

they "'must make an individualized assessment based on the facts presented.'" *Braggs*, 2008 WL 60180 at *3.  Here, the Court calculated and considered the advisory Guidelines range. However, the Court finds the unique facts of this case justify variance from that range and demand a sentence of probation, home detention and community service.  The Court is not unaware of the laborious compilation and assimilation of empirical data that informs the Guidelines.  In the vast majority of cases, sentences within the Guidelines' recommended ranges are most appropriate.  The Guidelines represent a hugely useful tool to sentencing judges and assist greatly in sentencing decisions.  However, § 3553(a) permits variance because, based on the unique facts of a particular case, austere adherence to the averages and generalities of the Guidelines can be unjust and contrary to reason.  In some cases, the sentence suggested by the Guidelines is not appropriate, as one size cannot be said to fit all.  No chart of numbers will ever fully contemplate, quantify and cipher the endless variations of the human experience.  While it might provide a normalizing force in sentencing, we cannot, with a system of points and categories, reduce justice to a universal formula.

**(a)(5)     Pertinent policy statements**

Probation, particularly home detention, represents a

AO72A
(Rev. 8/82)

desirable alternative to imprisonment that is consistent with the underlying policies of the Guidelines.  While the Court is careful not to commit the common error of conflating departure analysis with variance analysis, the Court finds language from § 5H1.4 to be instructive of policy considerations relevant in Coughlin's case.  That section states, "[i]n the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment."  That statement centers on the idea that when home detention is a sufficient and efficient punishment, as here, considerations of cost may be entertained.  The policy is best understood in light of the history of the Guidelines.

The Sentencing Reform Act of 1984, Pub. L. No. 98-473, § 211, 98 Stat. 1987, 1989-90 (1984), which created the United States Sentencing Commission and delegated to that Commission the authority to create the Guidelines, was enacted in part to address prison overcrowding.  *See U.S. v. K*, 160 F. Supp. 2d 421, 432 (E.D.N.Y. 2001) ("What is often ignored in rigidly applying the current Guidelines, is another of the statute's aims–reducing prison overcrowding.").  Congress, in the Sentencing Reform Act, instructed the Commission to formulate the Guidelines "to minimize the likelihood that the Federal prison population will exceed the capacity of Federal prisons."  28 U.S.C. § 994(g).  "[U]ndergirding the federal

Page 24 of  30

sentencing reform movement was the notion that prison overcrowding or costly expansion could best be controlled through selective incapacitation and utilization of alternatives to incarceration in appropriate cases." *K*, 160 F. Supp. 2d at 432. "Discretion to impose alternatives to incarceration was to be an important means of eliminating prison overcrowding under the Act." *Id.* at 432; *see also* Edward M. Kennedy, *Prison Overcrowding: The Law's Dilemma, in* 478 *Annals of The American Academy of Political and Social Science* 113, 120 (1985) ("These provisions evidence the clear congressional intent that the guidelines should not contribute to prison overcrowding but should help to bring prison populations in line with prison capacities."). As "[o]vercrowding and cramped living conditions are particularly pressing problems in many prisons," *Rhodes v. Chapman*, 452 U.S. 337, 356 (1981), "'the soul-chilling inhumanity of conditions in American prisons has been thrust upon the judicial conscience.'" *Id.* at 354 (citing *Inmates of Suffolk County Jail v. Eisenstadt*, 360 F. Supp. 676, 684 (D. Mass. 1973)). While it has been suggested that the Sentencing Commission "utterly failed in its assigned task of avoiding unnecessary incarceration," *K*, 160 F. Supp. 2d at 432 (citing Marc Miller, *Purposes at Sentencing,* 66 S. Cal. L. Rev. 413, 468 (1992) ("The Commission's dominant use of incarceration .

. . planted the seed for current and continuing problems with
overcrowding in prisons.")), it is the opinion of this Court
that sentences of home detention and probation, made
permissible through departure and variance, can provide ample
opportunity for sentencing judges to exercise their discretion
in favor of alternatives to imprisonment when such
alternatives accomplish the goals of criminal punishment.

Without question, the full force of the federal
government, including its arms of investigation, prosecution,
adjudication and punishment, have been brought to bear on
Coughlin, at great expense to the Western District of
Arkansas. The Court finds less expensive but equally
effective punishment alternatives to now absorbing the
unnecessary expense of boarding Coughlin as a prisoner to be
preferable. The Court finds the policies of the Guidelines to
support a preference for such punishment. At some point,
alternatives to imprisonment will have to be entertained in
appropriate cases to address the problem of prison
overcrowding.

### (a)(6)    Need to avoid unwarranted sentencing disparities

In *Gall*, the Eighth Circuit found that "the record does
not show that the district court considered whether a sentence
of probation would result in unwarranted disparities." 446

F.3d, at 890.  In response to that finding, the Supreme Court explained that "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.  Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities."  128 S.Ct. at 599. Thus, the Supreme Court stated clearly that factor (a)(6) is necessarily and adequately addressed by correctly calculating and carefully reviewing the Guidelines range, as the Court did above.

### (a)(7)    Need to provide restitution to victims

Conduct like Coughlin's is usually litigated in the civil arena in order to compensate injured corporate entities and is rarely considered a matter where the Government should vindicate the interests of society.[20]  Restitution is still made to victims like Wal-Mart Stores in the criminal arena. The Court ordered Coughlin to pay $411,218 in restitution and a $50,000 fine, which were both paid within days of the sentence.

---

[20] There is civil litigation pending in state court between Coughlin and Wal-Mart that closely tracks the criminal proceedings here.  At issue is Coughlin's pension plan, that may be voided as a result of the litigation.

AO72A
(Rev. 8/82)

### 4.   Explanation of sentence

*Gall* instructs the Court to "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." 128 S.Ct. at 597. The Court has attempted to provide such explanation in the discussion above.

Further on that discussion, the Court notes that there has been considerable debate of late concerning the sentencings of criminal defendants such as Gall and Coughlin and the role of the Guidelines in those sentencings. The goal is to reconcile a congressional desire to achieve some semblance of national uniformity in sentencing with a conflicting desire to maintain the discretion of sentencing judges, while not infringing upon the Sixth Amendment right to have jurors decide certain sentencing facts. The debate percolates from the deepest foundations of the criminal justice system, holds its principles to light and inquires into the nature and desirability of forms and degrees of punishment. That vigorous debate, played out in media and in courts, evidences the nation's desire for criminal courts that are powerful in their imposition of punishment but not prideful in their formulation of sentences, effective in their determent of crime but not cruel in their measure of retribution, firm enough to apply the forceful hand of the law

but merciful enough not to raise the specter of tyranny.  It is the struggle towards that goal that makes the American criminal justice system one of the greatest achievements of this nation's social evolution and ingenuity.  Punishment is imposed parsimoniously and with respectful consideration for the individuality of each peculiar defendant.  A court that mechanically doles out precalculated sentences on a wholesale basis to categories of faceless defendants fails to do justice.  A court that succumbs to apathy, bred by repetition, will cease to see defendants as individuals, with pasts and potentials, with humanity and promise.  "It is a terrible business to mark a man out for the vengeance of men," and "the terrible thing about legal officials . . . is simply that they have gotten used to it."  Gilbert Keith Chesterton, Tremendous Trifles 54-55 (BiblioBazar, LLC 2006) (1909).  "[T]he more a man looks at a thing, the less he can see it," so that "they do not see the prisoner in the dock; all they see is the usual man in the usual place.  They do not see the awful court of judgment; they only see their own workshop."  *Id*. at 55.

    The Court finds that a sentence recommended by the Guidelines, while of usual appropriateness for defendants like Coughlin, is not appropriate for this particular defendant.  The Court has no doubt that substantial punishment is necessary and deserved, but that punishment is achieved by

Page 29 of  30

probation, home detention and community service.  The Court is unaware of periods of home confinement or community service lengthier than that which it imposes on Mr. Coughlin today. The considerable sentence is sufficient under the circumstances.  Coughlin has suffered greatly, for he had it all and squandered his success.  For that he is paying the price and will be punished for the rest of his life.

/s/ Robert T. Dawson
Honorable Robert T. Dawson
United States District Judge

**AO72A**
**(Rev. 8/82)**