IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO.2:06CR20005-001 |
| | ) | |
| THOMAS M. COUGHLIN | ) | |

DEFENDANT'S SENTENCING MEMORANDUM

Defendant Thomas M. Coughlin ("Coughlin"), through counsel, respectfully submits this sentencing memorandum pursuant to the Court's Order dated December 17, 2007.

The sentence this Court imposed on August 14, 2006, is correct and justified by the original record and the supplemental materials before the Court on resentencing. Coughlin's medical condition continues to expose him to a very high risk of death or serious harm if he were to be incarcerated and justifies a departure under U.S.S.G. § 5H1.4. Coughlin's condition and the other circumstances of this case also support the variance this Court granted as an alternative based on the factors in 18 U.S.C. § 3553(a). In light of the recent Supreme Court opinion in *Gall v. United States*, the Court's original sentence would stand if challenged today. Finally, if this Court were to impose a sentence of imprisonment, it should grant a downward departure of sixteen months to account for the time Coughlin has spent confined to his home and subjected to electronic monitoring.

I.    **The Impact of the Supreme Court's Decision in *Gall v. United States*.**

The rationale of the Court of Appeals' opinion reversing Tom Coughlin's sentence can no longer be credited in light of the United States Supreme Court's subsequent decision in *Gall*

*v. United States.  See* 128 S.Ct. 586, 552 U.S. ___ (Dec. 10, 2007).  *Gall* reinforces the district court's broad discretion in selecting a sentence outside the Guidelines range, whether by applying a traditional Guidelines departure or by granting a variance under 18 U.S.C. § 3553(a). *Gall* forbids an appellate court from substituting its own judgment for that of the district judge, so long as the district judge explains his sentence with reasons supported by the record and tied to the considerations of § 3553(a).

A. The *Gall* Case

In *Gall*, the district court sentenced Brian Gall, a participant in an ecstacy distribution conspiracy, to a term of probation for thirty-six months, which was a downward variance from a Guideline range of thirty to thirty-seven months of imprisonment.  *Id.* at 591-92.  Gall had withdrawn from the conspiracy a few months after joining it, ceased selling or using illegal drugs of any kind, graduated from college, started a career, and otherwise lived a reputable life for the five years preceding his sentence.  *Id.* at 591-92.  The sentencing court received a "flood" of letters in support of Gall from members of the community.  *Id.* at 593.

Applying the factors enumerated in § 3553(a), the district judge determined that a sentence of probation was "sufficient, but not greater than necessary to serve the purposes of sentencing," in light of Gall's post-offense conduct, the support offered by his family and friends, his lack of any criminal history, and his age at the time of the offense conduct.  *Id.*  The district judge explained that a sentence of probation would reflect the seriousness of Gall's offense, while a prison term would deprive society of Gall's contributions despite evidence that Gall understood the consequences of his criminal conduct, posed little risk of recidivism, and would not be a danger to society.  *Id.*

1645828.2

The Eighth Circuit reversed and remanded, holding that the variance granted to Gall was so substantial that it needed to be supported by extraordinary circumstances. *Id.* at 594. The Eighth Circuit criticized the district judge's § 3553(a) analysis, holding that the judge (1) afforded too much weight to Gall's withdrawal from the conspiracy, (2) gave undue credit to studies showing impetuous behavior by persons under 18, since Gall was 21 at the time of the offense, (3) did not "properly weigh" the seriousness of Gall's offense, (4) did not consider how a sentence of probation might result in "unwarranted" sentencing disparities, and (5) placed too much emphasis on Gall's rehabilitation. *Id.*

In a 7-2 decision, the Supreme Court reversed. The Court first rejected the Eighth Circuit's rule that a so-called "extraordinary" variance from the Guidelines must be justified by "extraordinary" circumstances. *Id.* at 595. The Court also discredited the Eighth Circuit's rule that *any* non-prison sentence amounts to a "100% departure" from a Guidelines sentence, because that approach "gives no weight to the 'substantial restriction of freedom' involved in a term of supervised release or probation." *Id.* at 595-96.[1]

The *Gall* Court then addressed the Eighth Circuit's review of the district judge's § 3553(a) analysis, concluding:

> The Court of Appeals gave virtually no deference to the District Court's decision that the § 3553(a) factors justified a significant variance in this case. Although the Court of Appeals correctly stated that the appropriate standard of review was abuse of discretion, it engaged in an analysis that more closely resembled de

---

[1] *Gall* did not alter, but did reiterate, the process a sentencing judge must follow in the post-*Booker* era. The judge must begin by correctly calculating the applicable Guideline range. The judge then hears argument from the parties as to the sentence they deem appropriate and proceeds to consider all of the § 3553(a) factors. *Id.* at 596. A judge is *not* to presume that the Guidelines range is reasonable, but must make an "individualized assessment based on the facts presented." *Id.* at 597 In order to allow for meaningful review, the judge must adequately explain the chosen sentence. *Id.*

1645828.2

> novo review of the facts presented and determined that, in its view,
> the degree of variance was not warranted.

*Id.* at 600.   The Court held that the district judge properly considered Gall's age, his early withdrawal from the conspiracy, and his efforts to rehabilitate himself as supporting a variance under several 3553(a) factors.   *See* 18 U.S.C. § 3553(a)(2)(B), (C).   *Id.* at 600-01. The Eighth Circuit's view that the district judge did not give enough weight to the "seriousness of the offense" and the need to avoid unwarranted sentencing disparities was belied by the record.   *Id.* at 599.

*Gall* re-emphasized that appellate courts have a limited role in reviewing criminal sentences.   While the Eighth Circuit clearly disagreed with the district judge's § 3553(a) analysis and his ultimate sentence, the Supreme Court underscored that "[i]t is not for the Court of Appeals to decide *de novo* whether the justification for a variance is sufficient or the sentence reasonable."   *Id.* at 601-02.   Instead, a court of appeals must defer to a district judge's "reasoned and reasonable decision that the 3553(a) factors, on the whole, justified the sentence."

B. Applying *Gall*

Had *Gall* been decided prior to Tom Coughlin's sentencing, the Court of Appeals could not have reversed this Court's sentence.   *Gall* requires a more deferential standard than the Court of Appeals applied to this Court's findings under U.S.S.G. § 5H1.4.   Post-*Gall*, the Court of Appeals also would have deferred to the Court's "reasoned and reasonable" variance granted pursuant to 18 U.S.C. § 3553(a).

1. Departure under U.S.S.G. § 5H1.4   In reviewing Coughlin's sentence, the Court of Appeals took issue with the record evidence supporting one of the three factors governing § 5H1.4 departures.   *See United States v. Coughlin*, 500 F.3d 813, 818 (8th Cir. 2007).   Those factors are:  (1) whether the particular defendant's physical condition is such that he would find

4

imprisonment more than the normal hardship; (2) whether imprisonment would subject the defendant to more than the normal inconvenience or danger; and (3) whether the defendant's physical condition has any substantial effect on the defendant's ability to function.  *See United States v. Rabins*, 63 F.3d 721, 729 (8th Cir. 1995).

On appeal, the government did not contest the first and third factors.  The Court of Appeals found the record inadequate to support the second *Rabins* factor, because (1) defense witness Dr. Joel Carver conceded that he did not have first-hand knowledge of prison conditions; and (2) government witness Dr. Ballom testified that Coughlin would "probably" be classified by BOP as an inmate eligible for access to medical resources, would be monitored to help him cope with increased stress, and could possibly gain access to his several prescription medications (some of which are not available on the BOP formulary).  *Coughlin*, 500 F.3d at 816, 818. Weighing Dr. Carver's testimony against Dr. Ballom's, the Court of Appeals concluded that "the record, omitting conjecture, does not show Coughlin's condition will worsen in a BOP facility or that Coughlin requires special care that BOP cannot provide."  *Id.* at 818.

Under *Gall,* unless a district judge "select[s] a sentence based on clearly erroneous facts," the court of appeals *must* defer, because "the sentencing judge is in a superior position" to make factual findings.  *Gall*, 128 S.Ct. at 598.  There was ample record evidence supporting this Court's findings on the second *Rabins* factor, as Judge Bye's dissent recognized, *see Coughlin*, 500 F.3d at 820-21,  and as we discuss below in urging the Court to grant the 5H1.4 departure at resentencing.  If the Court of Appeals had applied the more deferential abuse of discretion standard mandated by *Gall*, it could not have reversed.

2. Downward Variance Under 18 U.S.C. § 3553(a).        This Court's variance under §3553(a) also would stand in light of *Gall*.  The Court of Appeals took issue with two aspects of

this Court's § 3553(a) analysis:  (1) that the Court did not articulate all of the positive and negative factors set forth in § 3553(a); and (2) that the Court relied on factors that are ordinarily irrelevant and are discouraged.  *Coughlin*, 500 F.3d at 819.  In *Gall*, the Eighth Circuit faulted the sentencing court on the same grounds, holding that it paid insufficient attention to the negative § 3553(a) factors, and that it placed undue emphasis on Gall's youth and efforts at rehabilitation.  *Gall*, 128 S.Ct. at 600-01.  The Supreme Court held that this amounted to *de novo* review of "whether the justification for a variance is sufficient or the sentence reasonable;" not the deference required under an abuse of discretion standard.  *Gall*, 128 S.Ct. at 602.

In the wake of *Gall*, the Eighth Circuit has recognized that it cannot equate its disagreement with a sentence with an abuse of discretion.  In the six weeks following *Gall*, the Eighth Circuit has affirmed two downward variances, one of which was a variance from a term of imprisonment to probation, citing the greater deference called for by *Gall.  See United States v. Lehmann,* No. 06-3597 (8th Cir. Jan. 17, 2008) (affirming downward variance from a 37 to 46 month term of imprisonment to five years of probation with six months of community confinement); *United States v. McGhee*, No. 07-1064 (8th Cir., Jan. 16, 2008) (affirming downward departure and variance of 103 months under deferential abuse of discretion standard). In its published opinions in these cases, the Court of Appeals panels make it clear that they might not have imposed those sentences, but they nevertheless affirmed, in light of *Gall*'s admonition to appellate judges: "The fact that an appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court."

1645828.2

*Lehmann*, slip op. at 7 (quoting *Gall*, 128 S.Ct. at 597); *McGhee*, slip op. at 3 (same).[2]

Both *Gall* and these recent Eighth Circuit cases would require affirmance of this Court's § 3553(a) variance. Here, the Court first adopted all the findings it made in support of the § 5H1.4 departure, which were unquestionably relevant to several § 3553(a) factors, and made additional findings relevant to other § 3553(a) factors. Judge Bye summarized these as follows:

> In this case, the record shows that the district court considered (1) the extraordinary need to provide the defendant with adequate medical care [3553(a)(2)(D)]; (2) the exemplary citizenship of the defendant measured by his history of good civic and charitable contributions as well as public service [3553(a)(1)]; (3) the importance of adequate deterrence, acknowledging the "worldwide exposure and ridicule" the defendant had already experienced [3553(a)(2)(B)]; (4) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment, taking into account the defendant has admitted responsibility and faces substantial civil liability and other financial consequences as a result of his crime [3553(a)(2)(A)]; and (5) the need to provide restitution to the victims, by ordering the defendant to pay full restitution [3553(a)(7)].

*Coughlin*, 500 F. 3d at 823 (Bye, dissenting) (footnotes omitted). There is little doubt that after *Gall*, an opinion like Judge Bye's would have been the majority, not the dissent.

## II.     This Court Should Impose the Same Sentence That Coughlin Originally Received and Fully State Its Reasons for Doing So.

In light of the Court of Appeals' statement that "the district court did not state the reasons with sufficient specificity for the non-Guidelines sentence," *Coughlin*, 500 F.3d at 819, counsel for Coughlin respectfully request that the Court, following imposition of the same sentence that

---

[2] In a recent opinion affirming an upward variance, the Court of Appeals also acknowledged that *Gall* "explicitly rejected  an appellate rule that requires extraordinary circumstances to justify a sentence outside the Guidelines range." *United States v. Braggs*, No. 07-1148 (8th Cir. Jan. 7, 2008) (internal quotations omitted).

7

was previously imposed, issue a written memorandum opinion or other statement of the basis for the sentence. Set forth below is a proposed statement of some of the grounds for the sentence.[3]

    A.    <u>Coughlin Suffers From an "Extraordinary Physical Impairment" Under U.S.S.G. § 5H1.4.</u>

A departure under U.S.S.G. § 5H1.4 is warranted.  The record shows that each of the three *Rabins* factors is met:  (1) Coughlin's physical condition has a substantial present effect on his ability to function; (2) imprisonment would subject Coughlin to more than the normal inconvenience or danger, and (3) in light of his condition, Coughlin would find imprisonment more than the normal hardship.  *United States v. Rabins*, 63 F.3d 721, 729 (8th Cir. 1995).  Both the original record and enhanced record at resentencing show that all three factors are met here.

<u>Rabins Factors 1 and 3</u>.  There has been no dispute throughout Coughlin's sentencing proceedings that the first and third *Rabins* factors have been established.  *Coughlin*, 500 F.3d at 818. Coughlin has severe acute heart disease.  He suffers from cardiac arrhythmia; severe pulmonary hypertension; obstructive sleep apnea; Adult onset Type II diabetes; hypertension; knee and joint inflammation stemming from a lack of cartilage in his knees, which impairs his gait and causes him constant pain; morbid obesity; a degenerative narrowing of the discs in his spine; chronic ethmoid sinusitis; and a high risk of colon cancer with a history of gastrointestinal

---

[3]  Citations are to the following materials, which are provided to the Court with this Memorandum: (1) Appellee's Appendix to the Court of Appeals, cited herein as "Coughlin App. __", which contains all of Coughlin's sentencing submissions to this Court in the first sentencing, other than the voluminous medical records; (2) the transcript of the original sentencing proceeding, cited herein as "S.T. __"; (3) Coughlin's medical records from September 2006 to October 2007, cited herein as "Carver Supp. Records" ; and (4) a Supplemental Letter Report of Phillip S. Wise, a former BOP official with extensive experience in medical and non-medical BOP facilities ("Wise Supp. Report"). Wise's CV and original report are at Coughlin App. 107-120.  The record may be further supplemented by testimony and other evidence presented at the resentencing hearing and materials presented by the government. Coughlin respectfully requests an opportunity to supplement the proposed statement of reasons for the sentence to address this additional evidence, if necessary.

issues and colon polyps.   (Coughlin App. 6, 93; Defendant's Sentencing Hearing Exh. 1 (Coughlin Medical Records); Carver Supp. Records).

Coughlin suffered a near fatal heart attack in 2003.   He survived only because of immediate treatment although he was considered dead.  His medical description is a "sudden cardiac death survivor."  He was revived by CPR and, shortly thereafter, underwent surgery to implant an electronic defibrillator (Implantable Cardioverter Defibrillator, or "ICD") to regulate his heart.  (Coughlin App. 5, 93; 97-98).

In January 2006, Coughlin had a life threatening cardiac arrhythmia induced by stress. This event led to his being hospitalized for a week and undergoing cardiac catheterization.  That surgery revealed moderate double vessel coronary artherosclerosis and severe pulmonary hypertension.   (Coughlin App. 99).   In real terms, this means that the right side of Mr. Coughlin's heart experiences twice the normal pressure, a condition which, Dr. Carver testified, "carries a very ominous prognosis in terms of risk of survival."  (S.T. 53).

Coughlin has severe obstructive sleep apnea.  He takes in very little oxygen during sleep, which has caused his pulmonary hypertension, aggravated his heart condition, and increased his risk of heart attacks while sleeping.  (Coughlin App. 93; S.T. 20-22).  He must use a mask and specialized equipment to monitor his sleep, provide supplemental oxygen, and prevent – to the extent possible – future cardiac events.  (Coughlin App. 100-101; S.T. 21-22).

Coughlin receives extensive treatments for his various conditions, including:   the functioning ICD unit in his heart, which requires regular monitoring by a cardiac specialist; a CPAP machine, face mask, related tubes and equipment to provide oxygen; a diabetic diet that is low in fat and cholesterol; regular monitoring of his blood pressure with a blood pressure measuring device, medical adjustments to regulate his blood pressure as needed; a glucometer to

9

measure blood sugar levels; recommended double knee replacement surgery; allergy awareness and monitoring; and over ten different types of daily medications, which are continually monitored for effectiveness and toxicity prevention to maintain his health.  (Coughlin App. 93-94; Carver Supp. Records; Wise Supp. Report).   Currently, Coughlin's medications are: Metformin (for diabetes), Lisinopril (for heart disease and hypertension), Caduet (for angina and hypertension), Zetia (for cholesterol), Indomethacin (for pain and inflammation caused by arthritis and other conditions), Cardedilol (for heart failure and hypertension), Actos (for diabetes), Starlix (for diabetes), Plavix (for heart condition), Magnesium oxide (for stomach problems), baby asprin, and a fiber tablet. (Wise Supp. Report; Carver Supp. Records).  The blockage in Mr. Coughlin's arteries has required his physician to be particularly aggressive in prescribing the medications that control his cholesterol, including Zetia.  (S.T. 54).  Half of Coughlin's prescribed medications, including Zetia, are not in the BOP formulary of available medications, nor are the generic equivalents; another medication, Lisniprol, is not approved by the BOP Formulary for the twice daily dosing prescribed for Coughlin. (Wise Supp. Report).  A CPAP machine, blood pressure measuring device, and glucometer would be available to Coughlin only "if deteremined by Bureau of Prisons clinicians to be medically necessary." (Wise Supp. Report).

At the sentencing hearing on August 11, 2006, Coughlin's eminently qualified treating cardiologist, Dr. Joel Carver, testified that Coughlin's condition is "fragile," citing specifically to his pulmonary hypertension (which is at twice the normal levels) and severe coronary disease. (S.T. 19-20).  Dr. Carver described Coughlin as "57 going on 87," and stated that his present condition affects his ability to function.  (S.T. 19).  Dr. Carver summarized Coughlin's principal conditions as follows:

10

> The cardiovascular system has been stressed to the maximum.  It's very fragile.  He has twice the anticipated pressures within the lung which is more limiting than the left side of the body.  He has an unstable electrical rhythm.  His diabetes, high blood pressure, and rhythm management is quite extensive.

(S.T. 28).

This evidence establishes that Coughlin's physical condition has a substantial present effect on his ability to function and that in light of his condition, Coughlin would find prison more than the normal hardship.

*Rabins* Factor 2.   The Court of Appeals stated in Coughlin's appeal that the second *Rabins* factor can be established if "imprisonment [would] worsen [the defendant's] condition." *Coughlin*, 500 F.3d at 818.  Dr. Carver stated that incarcerating Coughlin "would significantly increase his risk of another heart attack or death" and "would place him in a position of danger." (S.T. 29).  A lengthy period of incarceration "would be a grave risk to have further rapid deterioration of his cardiovascular health."   (S.T. 29).   Further, Dr. Carver testified that Coughlin, despite his "commanding physical presence," is "quite fragile and would not be able to probably physically defend himself" in a prison setting.  He explained:  "Certainly the stress of an altercation could trigger his defibrillator and certainly would contribute to deterioration of his blood pressure and other medical conditions."  (S.T. 30).  In sum, Dr. Carver testified that the stressors of prison would shorten Coughlin's life and could lead to a premature death.  (S.T. 29).

Dr. Carver testified that changing the medications that have controlled Coughlin's conditions would create problems.  (S.T. 26).  Specifically, Dr. Carver expressed concern that altering Coughlin's cardiovascular drug regimen would trigger further cardiac arrhythmia.  (S.T. 27).  Changing his diabetes and blood pressure medications would run the risk of worsening those conditions.   (S.T. 27).   His cholesterol medications are critical to preventing further

11

inflammation of his blocked arteries.   (S.T. 54).   Indeed, Dr. Carver opined that changing Coughlin's medications could cause his death.  (S.T. 27-28).

Defense counsel asked Dr. Carver if he had an "opinion within a reasonable degree of medical certainty whether or not it would be substantially more dangerous for Tom Coughlin to be incarcerated than for a healthy person to be incarcerated?"   Dr. Carver responded affirmatively, stating that Coughlin would "[b]e substantially at risk because of his pre-existing medical conditions, fragility, complicated medical equipment required continuously."  (S.T. 30). Home detention, Dr. Carver testified, "would certainly place him at much less risk for sudden death and disease progression."  (S.T. 31).

Dr. Carver testified that Coughlin has "an extraordinary medical impairment."  (S.T. 29). Defense counsel asked a number of summary questions:

> Q:     Can you state with a reasonable degree of medical certainty, Doctor, that incarceration of Mr. Coughlin in the Bureau of Prisons would be more than a normal hardship on him?
> A:     Yes.
>
> Q:     And can you state with a reasonable degree of medical certainty that to incarcerate Mr. Coughlin in the Bureau of Prisons would place him in a position of danger in your opinion?
> A:     Yes.
>
> Q:     And can you state with a reasonable degree of medical certainty whether or not his physical condition as it is right now has a substantial present effect on his ability to function?
> A:     Yes.

(S.T. 55-56).

The government did not take issue with Coughlin's medical diagnoses or their impact on him.  Instead, it offered the testimony of Dr. Tecora Ballom, a Clinical Consultant for the BOP and Acting Clinical Director at FMC Carswell, who testified about the medical care available in the BOP.  Dr. Ballom could not state what level of care facility Coughlin would be designated

1645828.2

within BOP.  (S.T. 75).  She acknowledged that Dr. Michael Nelson, the chief physician of BOP, had stated in his opinion that Coughlin would be placed in a Level 3 care facility, which is not a hospital setting.  (S.T. 75-76).  Dr. Ballom also admitted that prisoners normally will not receive medications that are not on the BOP formulary, and that any deviation from the BOP formulary must be approved by BOP officials in Washington.  (S.T. 77).  She could not say whether Coughlin's medications would be approved.  (S.T. 83).

Dr. Ballom also acknowledged that prison life includes stressful events, including strip searches, crowding, and disciplinary infractions that are not commonly present in the outside world.  (S.T. 88-89).  She also agreed that "Mr. Coughlin's medical problems will make his experience in prison more difficult than the experience of an inmate without those medical problems."  (S.T. 94).  She acknowledged that Coughlin is "at very high risk cardiac and pulmonary wise."  (S.T. 94).  "Very high risk," she explained in response to the Court's questioning, is the highest level of risk.  (S.T. 100-01).

Although Dr. Carver has not worked in a prison setting, his testimony that imprisoning Coughlin would risk his death or seriously harm is supported by his medical expertise and was informed by the original report of Phillip Wise, which detailed the prison conditions that would produce greater stress for older inmates. (Coughlin App. 107-112).  Wise's supplemental report explicitly states that the stressors that he described exist in medical care level facilities where Coughlin might be imprisoned.  (Wise Supp.Report).  Wise concludes, based on his twenty-five years of experience in the federal prison system (including positions as Warden of BOP's Federal Medical Center in Rochester, Minnesota, and Assistant Director of the Federal Bureau of Prisons with responsibility for the Health Services Division) that the stressors he identified in his original report "will likely be experienced to some degree by any older federal inmate regardless

13

1645828.2

of the facility designated for service of sentence." *Id.* Moreover, the BOP's policies regarding inmate access to health care are national policies that apply even at the higher Care Levels III and IV. *Id.* In other words, no matter where Coughlin were imprisoned, he would endure the same limitations on non-BOP formulary medications, as well as lack of access to specialists and the other health care risks that Wise detailed in his original report.[4]

The factual bases for Dr. Carver's opinion also were largely conceded by Dr. Ballom, including: that it was uncertain whether Coughlin would receive all of his medications while in BOP care (S.T. 76-83); that Coughlin would have to rely on non-medical BOP staff to maintain his life-preserving equipment (S.T. 84); that it was unclear how often Coughlin would have access to specialists such as a cardiologist,(S.T. 93-94), and that prison life, even in a BOP Level 4 medical facility, includes many of the stressful events and conditions described by Mr. Wise (S.T. 88-89). Most significantly, she joined in Dr. Carver's assessment that Coughlin is at "very high risk." (S.T. 94, 100-01). As Judge Bye noted in his dissent, the record "detail[s] how strip searches, the risk of physical assault from younger aggressive inmates, overcrowding, sleep disturbance, unnerving noise, the threat of disciplinary sanctions, separation from loved ones, and limited access to health care would likely elevate Coughlin's stress to dangerous levels." 500 F.3d at 820.

---

[4] The National Institute of Corrections (the "NIC"), which is part of the U.S. Department of Justice) has recognized that first-time offenders over the age of 50 face traumatic problems in prison that "accelerate their aging processes to an average of 11.5 years older than their chronological ages." *Correctional Health Care, Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates*, U.S. Department of Justice, National Institute of Corrections, 2004 ed., p. 10 (emphasis added). The NIC has further recognized that first-time offenders over the age of 50 "are likely to have problems adjusting to prison since they are new to the environment, which will cause underlying stress and probable stress-related health problems." *Id*.

14

The fact that BOP claims that it can adequately care for Coughlin is not determinative. Guideline 5H1.4 provides that "an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range; e.g. in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment." As other district judges have observed:

> Extraordinary [physical impairment] cannot mean only those conditions which the BOP cannot handle.  It cannot be that if the BOP can accommodate a given medical condition, it is by definition *not* extraordinary.  If that were so, there would be no need for the second sentence [of § 5H1.4], balancing costs of home detention and incarceration. . . The Bureau of Prisons can take care of a given individual, but at a cost that makes no sense given the other purposes of sentencing.

*United States v. Willis*, 322 F. Supp.2d 76, 84 (D. Mass. 2004). *See United States v. Jiminez*, 212 F. Supp.2d 214, 220 n.1 (S.D.N.Y 2002).  *See also United States v. Hildebrand*, 152 F.3d 756, 767 (8th Cir. 1998) (affirming 5H1.4 downward departure from range of 51 to 63 months to six months of community confinement where the defendant "has life threatening health conditions").

The second *Rabins*  factors is also satisfied in this case.  It is more likely than not that Coughlin's medical condition would worsen if he were imprisoned and there is an unacceptable risk that imprisonment would cause Coughlin's death or serious bodily harm.  A departure from from offense level 18 to offense level 10, which allows home confinement, is warranted because Mr. Coughlin has an "extraordinary physical impairment."  U.S.S.G. § 5H1.4.

    B.    The 18 U.S.C. §3553(a) Factors Support a Variance to a Sentence of Probation and Home Confinement.

The Court is required to consider the factors set forth in § 3553(a) in determing Coughlin's sentence.  These factors were summarized in the *Gall* opinion as follows:

> Section 3553(a) lists seven factors that a sentencing court must consider. The first factor is a broad command to consider  "the nature and characteristics of the offense and the history and characteristics of the defendant. 18 U.S.C. §

3553(a)(1). The second factor requires the consideration of the general purposes of sentencing, including:

"the need for the sentence imposed –

"(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

"(B) to afford adequate deterrence to criminal conduct;

"(C) to protect the public from further crimes of the defendant; and

"(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2).

The third factor pertains to "the kinds of sentences available," § 3553(a)(3); the fourth to the Sentencing Guidelines; the fifth to any relevant policy statement issued by the Sentencing Commission; the sixth to "the need to avoid unwarranted sentence disparities," § 3553(a)(6).; and the seventh to "the need to provide restitution to any victim," § 3553(a)(7). Preceding this list is a general directive to "impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of sentencing described in the second factor. § 3553(a) (2000 ed., Supp. V).

*Gall*, 128 S.Ct. at 596 n.6.

<u>History and Characteristics of the Defendant, § 3553(a)(1).</u>  Coughlin's poor health is obviously a key characteristic that the Court must consider under § 3553(a)(1), whether or not it grants a departure under § 5H1.4. *See United States v. Spigner* 416 F.3d 708, 712 (8th Cir. 2005); *United States v. Ryder*, 414 F.3d 908, 918 (8th Cir. 2005). All of the discussion regarding Coughlin's qualification for a 5H1.4 departure applies with equal force to the Court's consideration of Coughlin's health under § 3553(a)(1). In addition, Coughlin's lifetime of positive contributions to his communities, to charitable organizations, and to the victim, Wal-Mart, echoed in the many letters the Court received on his behalf at sentencing (Coughlin App. 1-5, 13-91), deserve significant weight under this factor. *See Gall*, 128 S.Ct. at 601-02. The record of Coughlin's good deeds throughout his life is extraordinary by any measure and especially so when compared to that of other defendants appearing before the Court for sentencing.

1645828.2

Nature of the Offense, § 3553(a)(1).   The Court is familiar with the facts of the offense from its review of presentence report and the submissions of the parties.   The Court must consider the government's argument that the seriousness of Coughlin's crime and its impact on Wal-Mart and the community warrants a term of imprisonment.   In assessing this negative impact, the Court must also consider the positive contributions Coughlin made to Wal-Mart and its employees during his twenty-seven year career there and to the community.

Purposes of Sentencing, 18 U.S.C. § 3553(a)(2).   In the unique circumstances of this case, a sentence of five years probation, with a lengthy 27 month period of home confinement, a fine, and full restitution serves the purposes of sentencing set forth in § 3553(a)(2): the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed medical care in the most effective manner.

The Court's original sentence will serve each of these purposes.   A sentence of imprisonment would be excessive, principally because it exposes Coughlin to an unacceptable risk to his health and life.   In addition, Coughlin has been punished and will continue to be punished for his conduct.   As the Court noted at the 2006 sentencing, Mr. Coughlin has endured a remarkable "fall from grace," in terms of public humiliation, damage to his reputation, and withdrawal from community life.   He has suffered severe economic consequences.   His substantial retirement package, earned by his 27 years at Wal-Mart, is in jeopardy.[5]   These consequences are appropriate considerations under § 3553(a). *See United States v. Pauley*, No.

[5] The Arkansas Supreme Court held that Wal-Mart may be able to rescind Coughlin's retirement agreement due to his failure to disclose his criminal conduct. *Wal-Mart Stores, Inc. v. Coughlin*, No. 06-315 (Ark. April 12, 2007).   That action is now pending in the Circuit Court of Benton County.

1645828.2

07-4270, slip op. at 18 (4th Cir. Dec. 28, 2007) (post-*Gall*, defendant's loss of pension and teaching certificate as a result of his conviction may be considered in assessing adequacy of punishment and deterrence under section 3553(a)(2)). *See also Lehmann*, slip op. at 4 (affirming variance to probation and noting that defendant had suffered the greater punishment of losing her daughter, making term of imprisonment unnecessary). Moreover, twenty-seven months of confinement to one's home unquestionably is punitive. *See United States v. Romualdi*, 101 F.3d 971, 977 (3d Cir. 1996) (noting that home confinement is punitive). The Supreme Court in *Gall* also noted that the standard conditions of supervised probation, even without home confinement, "substantially restrict [a defendant's] liberty" *Gall*, 128 S. ct. at 595.

The additional punishment of a term of imprisonment also is unnecessary to deter Coughlin or others from future crimes or to protect the public. Not only was Coughlin's offense conduct an aberration, but his age, lack of criminal history, and service of a lengthy sentence of home confinement make the chances of Mr. Coughlin recidivating nil.[6] As the Court stated in the original sentencing, it did not "believe that any period of imprisonment is in anyone's best interests." (S.T. 123)

Finally, section 3553(a)(2)(D) directs the court to choose a sentence that will provide Coughlin with needed medical care "in the most effective manner." While the Government takes the position that the BOP can care for nearly anyone, including Mr. Coughlin, the Eighth Circuit has stated that such a rationale "misses the mark," and that a sentencing court must consider the best way to provide needed medical care and may vary downward on that basis. *See United States v. Wadena*, 470 F.3d 735, 739 (8th Cir. 2006). Coughlin's need for extensive medical care

---

[6] The Sentencing Commission's study of recidivism indicates that a defendant of Coughlin's age with no prior criminal record is among the least likely to recidivate. *See http://ussc.gov/publicat/Recidvism_General.pdf* at 23. (Coughlin App. 11).

remains obvious in light of his health conditions, and the Court's sentence of home confinement serves that purpose. Moreover, it does so at no cost to the government. *See also Coughlin*, 500 F.3d at 823 (Bye, dissenting) (noting that this Court's original sentence fulfilled "extraordinary need to provide the defendant with adequate health care").

Sentencing Guidelines Considerations, § 3553(a)(3), (4), (5), and (6). The Court considered the Guidelines calculation contained in the presentence report, which the parties agree is an offense level of 18, prior to any departure. The Court must also consider the Sentencing Commission's policy statements, which explicitly provide that "in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment." U.S.S.G. § 5H1.4. Although the court must consider "the need to avoid unwarranted sentencing disparities," any difference between Coughlin's sentence and that of another first offender convicted of similar offenses is fully justified by the extraordinary circumstances presented by this case, especially Coughlin's medical condition. The Court considered this case in comparison with the many other criminal cases that have come before the Court and concluded that it was the "most unusual case" it had ever handled. *See Lehmann,* slip op. at 5 (district judge's remark on exceptional nature of case reflected consideration of the need to avoid unwarranted sentencing disparities).

Restitution, § 3553(a)(7). Mr. Coughlin has paid the full amount of restitution imposed by the Court. This factor was both considered and served by the Court's original sentence.

In sum, after weighing all the section 3553(a) factors, the original sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing described in § 3553(a)(2).

1645828.2

**III.    If a Sentence of Imprisonment is Imposed, the Court Should Depart Downward or Vary to Credit Coughlin for the Time He Has Served in Home Detention.**

If this Court were to impose a sentence of imprisonment, it should depart downward by sixteen months, the time that Coughlin has been detained in his home and subjected to electronic monitoring.  The Bureau of Prisons does not grant a sentencing "deduction" for time served in home confinement. *See* Bureau of Prisons Program Statement No. 5880.28 (Jun. 19, 1999) (interpreting 18 U.S.C. § 3585(b)).[7]  However, a sentencing court has discretion to depart or vary downward at resentencing to account for time a defendant has served under an original sentence of home confinement and probation.  In the pre-*Booker* era, the proper means to grant credit was a downward departure from the Guidelines sentence.  *See United States v. Martin*, 363 F.3d 25, 37 (1st Cir. 2004) (holding that defendant must receive credit at resentencing for time served on probation and under home detention); *United States v. Carpenter*, 320 F.3d 334, 345 (2d Cir. 2003) (instructing district court on remand to give credit at resentencing for time served on probation); *United States v. Lominac,* 144 F.3d 308, 318 (4th Cir. 1998) (court may credit time served on supervised release against new sentence of imprisonment); *United States v. Romualdi*, 101 F.3d 971, 977 (3d Cir. 1996) (defendant's service of six months of home confinement could be basis for downward departure at resentencing); *United States v. Miller*, 991 F.2d 552 (9th Cir. 1993) (proper to depart downward based on six months of home detention already served).[8]  The

---

[7]Defense counsel confirmed BOP's "no credit" policy for home detention by speaking with Scott Bomson in the BOP General Counsel's Office.

[8]Eighth Circuit precedent has been limited to whether *presentence* house arrest or home confinement must be credited as "official detention" under 18 U.S.C. § 3585(b).   *See United States v. Wickman*, 955 F.2d 592, (8th Cir. 1992) (pre-trial house arrest restrictions were not "official detention" subject to credit under § 3585(b)); *Moreland v. United States*, 968 F.2d 655, 657 (8th Cir. 1992) (presentence confinement at halfway house not "official detention" under § 3585(b)); *Starchild v. Federal Bureau of Prisons*, 973 F.2d 610 (8th Cir. 1992).  The Supreme Court in *Reno v. Koray*, 515 U.S. 50 (1995), held that time served in a community center while on bail awaiting a final sentence did not qualify as "official detention" eligible for credit under

1645828.2

same crediting principle applies in the post-*Booker* era, where a court may either depart downward from a Guidelines sentence or grant a downward variance. *See United States v. Toohey* 448 F.3d 542, 547 n.2 (2d Cir. 2006) (credit for two years served on probation should be given at resentencing, whether court imposes Guidelines or non-Guidelines sentence).

This Court should grant Coughlin day for day credit of sixteen months against any sentence of incarceration. Home confinement with monitoring is a serious form of detention and carries a loss of freedom far more profound than that of probation, which the Supreme Court in *Gall* recognized as "substantial restriction" of liberty. *See Gall*, 128 S.Ct. at 595. With very few, and narrow, exceptions granted by his probation officer, Mr. Coughlin has been unable to leave his home.

The Court must consider the punishment Coughlin has already endured in determining what new sentence will serve the purposes of § 3553(a). Mr. Coughlin's detention in his home for the last sixteen months has served the purposes of punishment and deterrence. *See Romualdi*, 101 F.3d at 977 (fact that defendant had served six month sentence of home confinement relevant at resentencing to issue of whether additional punishment would serve any deterrent purpose); *Miller,* 991 F.2d 552 (fact that defendant had already been punished by serving six months of home detention should be considered in § 3553(a) analysis). Notably, the Sentencing Guidelines provide for a day-for-day crediting of home detention for prison time at lower offense levels. U.S.S.G. § 5C1.1(e)(3). That is the just outcome here if this Court imposes a sentence of imprisonment, whether the Court does so as a downward departure or a downward variance.

**CONCLUSION**

---

§.3585(b). These cases do not address the appropriateness of a departure or variance upon resentencing to take into account a period of post-sentencing home detention that BOP will not credit against a sentence of imprisonment.

For the reasons set forth above, and for such other reasons as may appear to the Court, counsel for Tom Coughlin request that the Court re-impose the same sentence it previously imposed: a term of five years probation, with the special condition of home detention for 27 months, restitution, and a fine. The period of probation and home detention should be deemed to have begun following the Court's original sentencing.

Respectfully submitted,


_____/s/____W.H. Taylor
W.H. Taylor
Taylor Law Firm
P.O. Box 8310
303 E. Millsap Rd.
Fayetteville, AR 72703
(479) 443-5222

William W. Taylor, III
Blair G. Brown
Caroline Judge Mehta
Zuckerman Spaeder LLP
1800 M Street NW, Suite 1000
Washington, DC 20036
(202) 778-1829

Counsel for Defendant
        Thomas M. Coughlin

1645828.2

## <u>CERTIFICATE OF SERVICE</u>

I, W. H. Taylor, Attorney for Defendant Thomas M. Coughlin, hereby certify that a copy of the foregoing Defendant's Sentencing Memorandum was mailed on the 22nd day of January 2008, to:

> Robert C. Balfe
> United States Attorney
> Western District of Arkansas
> P.O. Box 1524
> Fort Smith, AR  72902

> Christopher D. Plumlee
> Assistant United States Attorney
> Western District of Arkansas
> P.O. Box 1524
> Fort Smith, AR  72902

_____/s/____W.H. Taylor
W. H. Taylor

1645828.2